Joshua W. Carden, SBN 021698
JOSHUA CARDEN LAW FIRM, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charlene M. Olewin,<br><br>                Plaintiff,<br><br>v.<br><br>Premise Health Employer Solutions, LLC, a Delaware limited liability company,<br><br>                Defendant. | **ORIGINAL COMPLAINT** |

Plaintiff Charlene M. Olewin ("Olewin"), for her Original Complaint against Defendant Premise Health Employer Solutions, LLC ("Premise Health" or "Defendant"), alleges as follows:

**NATURE OF THE CASE**

1. This action is brought to remedy discrimination on the basis of sex in the compensation, terms, conditions and privileges of employment and retaliation in violation of the Federal Equal Pay Act ("EPA"), 29 U.S.C. §§ 206(d) & 215(a)(3), and Title VII, 42 U.S.C. §§ 2000e-2 & 2000e-3.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter and the parties hereto pursuant to 28 U.S.C. § 1331.

3. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 29 U.S.C. § 216(b).

4. Venue in this Court is proper because the unlawful acts complained of herein

occurred within Maricopa County, Arizona.

**PARTIES**

5.  Olewin is a female individual, who resides in Maricopa County, Arizona.

6.  Upon information and belief, Defendant Premise Health is a Delaware limited liability company, authorized to do business and doing business in Maricopa County.

7.  Defendant is an "employer" pursuant to 29 U.S.C. § 203 and 42 U.S.C. § 2000e.

**FACTS**

8.  Premise Health owns and operates more than 600 health and wellness clinics nationwide, including multiple "onsite" locations at the Intel campus in Maricopa County.

9.  Premise Health employed Olewin, an Arizona licensed RN, as a nurse on the Intel campus beginning in June 2016.

10. A few months after she was hired, Olewin learned that her boss had also hired a younger male nurse, with significantly less experience and credentials than those Olewin possessed.

11. The male nurse bragged to fellow nurses about his salary, at which time Olewin learned that he was making greater than $1.00 per hour more than she was.

12. In May 2017, Olewin inquired of Human Resources as to a) whether it was true that he was making more money than she was; and b) if so, the reason she was making less money than the less experienced, less credentialed male nurse.

13. Human Resources responded several days later, stating only that "he falls with the scope of the pay rate" or words to that effect; and warned Olewin (illegally) about discussing pay with other employees.

14. Less than 60 days later, in July 2017, Olewin received a write up for failing to respond to a call on the Intel campus where she was stationed due to a technological malfunction for which she was not responsible.

15. Upon information and belief, Premise Health was fully aware of the equipment problems that led to the technological malfunction; problems that continued through the end of Olewin's employment.

16. At least four of Olewin's co-workers (including the male nurse) had previously experienced this same technological malfunction without any discipline.

17. This time, because there was another female nurse working at the same time, Olewin and the other female nurse both received write-ups.

18. However, Olewin's was a "final" written warning, and the other nurse's was not.

19. The other nurse even remarked that she wouldn't have been written up at all except that Olewin was there.

20. Upon information and belief, the written warning was directly caused by Olewin's wage dispute in May 2017.

21. Olewin disputed the warning in writing to Human Resources.

22. A couple of months later, Olewin learned that the head of Human Resources had decided that the final written warning would be retracted.

23. The managers who issued the written warning to Olewin were unhappy with the retraction and the fact that Olewin had complained of the issue to upper management.

24. In October 2017, the same managers placed Olewin on a 90-day Performance Improvement Plan (PIP) for events – specifically related to documentation - that had allegedly occurred prior to the events that led to the write up in July 2017.

25. The younger male nurse performed his documentation in a similar or identical fashion but was not written up or placed on a PIP for the same actions that Olewin had allegedly committed.

26. In November 2017, Olewin called Premise Health's Ethics Hotline to complain about the PIP and the unequal pay.

27. Although Premise Health claims to have done an "investigation" into Olewin's complaint, nothing was changed about the pay discrepancy or the PIP.

28. In fact, the response from Human Resources regarding the pay discrepancy was "it's not that big an amount" or words to that effect.

29. Premise Health relied on the PIP to deny Olewin a raise during that year's performance evaluation.

30. Thereafter, Olewin was getting ready to paid leave in November 2017 that she had received permission to take several months before.

31. Pursuant to company policy, Olewin obtained her own substitute coverage for the time that she was to be gone.

32. Right before her leave was set to commence, her managers informed her that her leave was being retracted – the individual that Olewin had found for coverage was now "unavailable."

33. The managers had instead reassigned that substitute to cover another employee and denied Olewin's leave in contravention of Premise Health policy.

34. Additionally, Premise Health denied Olewin a flu shot she sought before her travel, claiming that they were not allowed to provide this; but provided it to her male co-worker when he requested it.

35. Upon information and belief, these events constituted additional discrimination and/or retaliation for Olewin's complaints about the wages and the discriminatory way she was being treated.

36. In January 2018, Olewin filed a charge of discrimination with the EEOC, alleging, *inter alia*, sex discrimination, retaliation, and equal pay violations. A true and correct copy of that charge is attached hereto as Exhibit A.

37. Over the next several months, the EEOC began to investigate and received information from Olewin and Premise Health.

38. In July 2019, Olewin went on a brief vacation.

39. Immediately upon her return, on July 8, 2019, she was suspended by her managers and placed on administrative leave without being told why.

40. When she inquired as to why, she was informed by her managers that it was because she had allegedly altered a medical record before her vacation.

41. Other nurses – those who had not filed EEOC charges or other complaints - have altered medical records without discipline.

42. On July 9, 2019, Olewin was instructed to write a statement explaining the

1  alteration, but was given only a few minutes to do so, with a manager standing over her the entire
2  time.
3      43.    She was told that she was being terminated, but could resign in lieu of termination,
4  which she agreed to do as she believed she had no other choice.
5      44.    At or near the time of her termination, Premise Health made a false report against
6  Olewin's license to the State Board of Nursing.
7      45.    Upon information and belief, the reason for Premise Health's termination, false
8  report, and the other adverse actions taken against Olewin was her sex, or in retaliation for her
9  EEOC charge and other protected activities.
10     46.    In November 2019, the EEOC issued a letter of determination in Olewin's favor on
11 her Equal Pay Act and Title VII claims.  A true and correct copy of this Letter is attached as
12 Exhibit B.
13     47.    Olewin filed a second charge of discrimination on February 14 2020 related to the
14 termination, which charge was amended on May 15, 2020 to include the false report to the State
15 Board of Nursing. A true and correct copy of this charge and its amendment is attached as
16 Exhibit C.
17     48.    Olewin received her first notice of suit rights dated March 5, 2020, related to her
18 first charge of discrimination.  A true and correct copy of this notice is attached as Exhibit D.
19     49.    As a result of Premise Health's sex-based wage practices, Olewin has lost wages
20 because she is a woman.
21     50.    As a result of Premise Health's retaliation towards Olewin, Olewin has lost an
22 unknown amount of wages and commission.
23     51.    Additionally, as a result of the foregoing, Olewin has suffered significant emotional
24 distress. Her feelings of being targeted and victimized by Premise Health have left her
25 depressed, anxious, angry, and humiliated.
26     52.    All conditions precedent to this lawsuit have occurred or been satisfied.
27 //
28 //

## COUNT ONE

### (SEX-BASED PAY DISCRIMINATION IN VIOLATION OF THE EQUAL PAY ACT)

53. Olewin hereby re-alleges and incorporates the preceding paragraphs of this complaint.

54. Defendant has employed Olewin and at least one male employee in jobs requiring equal skill, effort, and responsibility.

55. Olewin and the male employee performed their jobs under similar working conditions.

56. Olewin was paid a lower wage than her male co-worker and similarly situated male colleagues performing substantially similar work.

57. The differential in pay between male and female employees was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

58. Defendant willfully caused, contributed to, or caused the continuation of wage rate discrimination based on sex, in violation of the Equal Pay Act.

59. As a direct, legal and proximate result of the discrimination, Olewin has sustained, and will continue to sustain, economic damages to be proven at trial.

60. Olewin seeks all injunctive, declaratory, and monetary relief available for equal pay violations at trial, including liquidated damages for all willful violations, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT TWO

### (RETALIATION UNDER 29 U.S.C. § 215(A)(3))

61. Olewin hereby re-alleges and incorporates the preceding paragraphs of this complaint.

62. Through her protected activity, Olewin has advised Defendant of its unlawful and discriminatory practices based on sex.

63. As a result of Olewin's complaints, Defendant's agents and employees took

materially adverse actions against Olewin, including, but not limited to, making threatening claims of serious misconduct and termination and the report to the State Board of Nursing.

64. Defendant's adverse actions constituted retaliatory workplace harassment.

65. Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under 29 U.S.C. § 215(a)(3).

66. As a direct, legal and proximate result of the discrimination, Olewin has sustained, and will continue to sustain, economic damages to be proven at trial.

67. Olewin seeks all injunctive, declaratory, and monetary relief available for equal pay violations at trial, including liquidated damages for all willful violations, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT THREE
## (TITLE VII SEX-BASED DISCRIMINATION)

66. Olewin hereby re-alleges and incorporates the preceding paragraphs of this complaint.

67. Plaintiff is a member of a protected group: female.

68. Defendant has violated Title VII by engaging in direct discrimination and disparate treatment of Plaintiff because of her sex.

69. Additionally, Defendant has violated Title VII by creating and fostering a pervasive hostile work environment that altered the terms and conditions of Plaintiff's employment and was abusive.

70. The disparate treatment, and hostile environment were un-welcomed by the Plaintiff.

71. As a result of the foregoing, Defendant is liable to Plaintiff for violation of Title VII.

72. Defendant's acts of discrimination in this regard were unlawful and intentional.

73. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of severe emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

74. Plaintiff suffered and will continue to suffer irreparable injury and monetary

damages as a result of Defendant's discriminatory practices until this Court grants relief.

## COUNT FOUR

## (TITLE VII RETALIATION)

75. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

76. Plaintiff engaged in several protected activities, including by reporting a perceived discriminatory environment to Defendant's HR and Ethics Hotline.

77. Defendant has retaliated against Plaintiff for engaging in protected activity by taking several adverse actions as described herein, in violation of Title VII.

78. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

79. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices until this Court grants relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Olewin prays for relief as follows:

A. For a declaration that Defendant's actions and practices complained of herein are unlawful;

B. For an order enjoining Defendant from engaging in the unlawful acts complained of herein;

C. For back pay, front pay, and all other compensation denied or lost to Olewin by reason of Defendant's unlawful action, in an amount to be proven at trial;

D. For direct and consequential damages as a result of Defendant's actions;

E. For liquidated damages;

F. For interest on back pay, lost wages, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

G. For attorneys' fees and costs of suit pursuant to the statutory and contract actions described herein; and

H. For such other relief as this Court deems just and proper.

## JURY DEMAND

Olewin hereby demands a trial by jury of all issues so triable.

Respectfully submitted this 3rd day of June, 2020,

                JOSHUA CARDEN LAW FIRM, P.C.

By: <u>/s/Joshua W. Carden</u>
     Joshua W. Carden
     *Attorneys for Plaintiff*
     *Charlene M. Olewin*